**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCIS RUBY MARTINEZ BENITEZ,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-04572-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

## I.
## INTRODUCTION

On August 13, 2026, petitioner Francis Ruby Martinez Benitez, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. At the time, petitioner was being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends her detention violates her right to substantive and procedural due process under the Fifth Amendment, the Administrative Procedure Act ("APA"), and the Immigration and Nationality Act ("INA"). Petitioner also alleges respondents violated her Fourth Amendment right to be free from unreasonable seizure. The Petition is supported by the declaration of Carrie LeRoy ("LeRoy Decl.") and

exhibits. Petitioner seeks immediate release from immigration custody, as well as declaratory and other injunctive relief.

Respondents did not file an answer. On August 21, 2026, petitioner filed a reply supported by a second declaration of Carrie LeRoy ("LeRoy Reply Decl."). Docket no. 7. Petitioner informs the court she was transferred to the El Valle Detention Facility ("El Valle") in Raymondville, Texas without notice. *Id.* Petitioner therefore also requests the court to order her returned to the Central District of California.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore orders petitioner's immediate return to the Central District of California, grants the Petition, and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a native and citizen of Nicaragua. Pet. ¶¶ 12, 29.[1] On July 18, 2023, petitioner and her two children entered the United States as a Nicaraguan Humanitarian Parolee. *Id.* ¶ 30; *see* LeRoy Decl., Ex. A. Immigration officials briefly detained and then issued her an I-94 parole admission record. Pet. ¶ 30.

For the last three years, petitioner lived in Houston, Texas, where she worked and her children attended school. *Id.* ¶ 32; *see* LeRoy Decl., Ex. D. Petitioner has no criminal history. Pet. ¶ 32. On January 28, 2025, petitioner filed an application for asylum. *Id.* ¶ 31.

On July 15, 2026, plain clothes ICE agents arrested petitioner as she was about to board a domestic flight at Los Angeles International Airport. *Id.* ¶ 33. The ICE agents

---

[1] The Petition is signed only by petitioner's counsel and it is not verified by petitioner. The court accepts the facts alleged in the Petition: (1) for the purposes of Part II of this opinion if uncontested; (2) if supported by documents submitted by petitioner as part of the Petition; or (3) if the information could be within counsel's personal knowledge.

did not present a warrant. *Id*. The ICE agents told her that her Real I.D. from Texas was not valid in California and that her parole was also invalid. *Id*. They then transported petitioner to Adelanto in chains. *Id*. Petitioner did not have prior notice that she would be detained, nor was she provided an individualized custody determination. *Id*. ¶ 50.

## III.

## DISCUSSION

Petitioner raises seven claims for relief: (1) her detention violates her substantive due process rights under the Fifth Amendment; (2) her detention violates her procedural due process rights under the Fifth Amendment; (3) her initial arrest constituted an unreasonable seizure under the Fourth Amendment; (4) her detention violates the APA; and (5) her detention violates three sections of the INA. Pet. ¶¶ 69-97.[2] In the Reply, petitioner also argues respondents transferred her to El Valle without providing notice of their intent to remove her from the Central District of California as required by General Order 26-5 and the Briefing Schedule. Reply at 1; *see* docket no. 5. Respondents failed to file a notice of appearance or answer.

### A. This Court Has Jurisdiction Over the Claims in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues she should be released from respondents' custody because her detention violates the Due Process Clause of the Fifth Amendment. *See* Pet.

[2] The Petition contains typographical errors. Claim One is enumerated paragraphs 69 through 73 and Count Two is enumerated paragraphs 67-72. Thus, the Petition contains two sets of paragraphs 67-73. Where relevant, the court will refer to the specific claim and paragraph numbers.

Claim One ¶¶ 69-73, Claim Two ¶¶ 67-72. She has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging her detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>Petitioner's Re-Detention Without Adequate Procedural Protections Violated Due Process</u>**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the

State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues she has a liberty interest in her release from immigration custody. *See* Pet. ¶ 48.

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation. Petitioner arrived in the United States in July 2023 and has resided here ever since. Pet. ¶¶ 30, 32. Petitioner has family and community ties, employment, and a pending asylum application. *Id.* ¶¶ 30-32; *see* LeRoy Decl., Exs. B-D. Petitioner established a life for herself in the United States while released on parole and therefore has acquired a protected liberty interest in her release from immigration custody. *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody v. Warden*, 2026 WL 51976, at *5-6 (C.D. Cal. Jan. 5, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond."); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Re-Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here her interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has significant ties to family and the community in the United States. She has two children, is employed, and is a member of a church. *See* Pet. ¶¶ 30-32; LeRoy Decl., Exs. C-D. As such, her personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain her in the first place. *See* 8 C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole). Moreover, respondents have not opposed her release; indeed, they failed even to appear or file an answer. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036. Moreover, because petitioner has already been found not to be a danger to the community or a flight risk by respondents, the government has minimal interest in detaining her at all, absent some showing of changed circumstances. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of her liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment. Because petitioner's re-detention was unlawful, the proper remedy is release from custody. *See Singh*, 2025 WL 3251437, at *9; *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

**3. Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention**

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

**C. Petitioner Was Improperly Transferred Out of the Central District**

Notice of General Order 26-05 and Briefing Schedule ("Notice") was entered on August 13, 2026. Docket no. 5. Both the Notice and General Order 26-05 state that during the pendency of these proceedings, the government "shall provide at least two days court days' notice to the petitioner, petitioner's counsel, and the Court of its intent to remove the petitioner from the Central District of California." *Id.* (Notice ¶ 6; General Order 26-05 ¶ 6). After filing the Petition, and after entry of the Notice, counsel for petitioner learned that petitioner had been transferred to El Valle. LeRoy Reply Decl. ¶ 2. Neither counsel nor the court received a notice of intent to remove petitioner from

the Central District. *Id*. Thus, it appears petitioner's transfer to El Valle violated General Order 26-05.

According to the ICE Online Detainee Locator System, as of August 26, 2026, petitioner had been moved to the Eloy Detention Center in Eloy, Arizona.[3] But petitioner is still outside the Central District of California. Petitioner must therefore be returned to the Central District of California.

**D. <u>Petitioner's Remaining Claims</u>**

Petitioner also argues that respondents have violated her right to substantive due process under the Fifth Amendment, her Fourth Amendment right to be free from unreasonable seizures, the APA, and the INA. Pet. Claim One ¶¶ 69-72, ¶¶ 73-97. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claims. Petitioner may raise the claims again if she is subject to any future detention.

**IV.**

**<u>ORDER</u>**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately return petitioner Ruby Martinez Benitez (A# 232-508-928) to the Central District of California: (3) upon petitioner's return to the Central District of California, respondents shall immediately release petitioner Ruby Martinez Benitez (A# 232-508-928) from immigration custody; (4) respondents shall return any confiscated property and documents to petitioner upon her release; (5) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; (6) respondents shall file a status report no later than September 1, 2026, confirming that petitioner was returned to the Central District of California and released from

[3] *See* locator.ice.gov/odls/#/search.

respondents' custody; and (7) respondents shall file a further report no later than September 4, 2026, addressing whether petitioner was removed from the Central District of California after August 13, 2026 without notice in violation of the court's order.

Dated: August 27, 2026

SHERI PYM
United States Magistrate Judge